# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| THE KIAMICHI RIVER LEGACY ALLIANCE, INC., et al. | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.    19-cv-108-RAW |
| DAVID BERNHARDT, in his official capacity as acting Secretary of the United States Department of the Interior;    et al | ) ) ) ) ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF MOTION TO DISMISS AND BRIEF IN SUPPORT BY DEFENDANTS BILL ANOATUBBY, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF CHICKASAW NATION, AND GARY BATTON, IN HIS OFFICIAL CAPACITY AS CHIEF OF CHOCTAW NATION OF OKLAHOMA [DOC 36]**

Michael Burrage, OBA No. 1350
Patricia Sawyer, OBA No. 30712
**WHITTEN BURRAGE**
512 N. Broadway, Suite 300
Oklahoma City, OK 73102
Telephone:    (405) 516-7800
Facsimile:     (405) 516-7859
mburrage@whittenburragelaw.com
psawyer@whittenburragelaw.com

*Attorneys for Defendants Bill Anoatubby, in his official capacity as Governor of the Chickasaw Nation and Gary Batton, in his official capacity as Chief of the Choctaw Nation of Oklahoma*

## INTRODUCTION

Defendants' Bill Anoatubby in his official capacity as Governor of the Chickasaw Nation and Gary Batton in his official capacity as Chief of the Choctaw Nation of Oklahoma (collectively, "Nations" or "Tribal Officials") submit this reply to Plaintiffs' Response to Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6) and 12(b)(7)

Dismissal of this lawsuit with respect to the Nations is required because the Plaintiffs fail to meet their burden of identifying an adequate waiver of tribal sovereign immunity. *See* FRCP 12(b)(1). The absence of a waiver of tribal sovereign immunity also requires consideration of whether dismissal of any remaining claims against other defendants is appropriate under to FRCP Rules 19 and 12(b)(6)-(7).

## ARGUMENTS AND AUTHORITES

**I.  Plaintiffs Fail To Establish That The Court Has Jurisdiction.**

Plaintiffs do not dispute that the Nations enjoy sovereign immunity and have not waived it is this case. [Doc. 51] at 4. However, in an effort to overcome the jurisdictional failings of the Complaint, the Plaintiffs try to allege in their Response that Congress waived the Nations' sovereign immunity for Section 9 claims[1] in the Endangered Species Act ("ESA"). Yet they fail to cite a single case, and concede that there is not one, in which a federal court held Congress waived tribal sovereign immunity for purposes of an ESA citizen suit. Instead they rely on sweeping inferences and summarily dismiss cases which

---

[1] Plaintiffs Response states "The Complaint seeks no relief from [the Nation Defendants] based on § 7 of the ESA." [Doc 51] at 9 This obviates the need for the Nations to responsd and request Nations an Order to memorialize.

hold counter to their contentions to try and distract from the fact that they cannot establish the standard at issue. The standard they must meet is: Congress must express *unequivocal abrogation* of the Nations sovereign immunity. *C&L Enterprise v. Citizen Band Potawatomi Indian Tribe,* 532 U.S. 411, 418 (2001) ("To abrogate tribal immunity, Congress must 'unequivocally' express that purpose.") (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1973)).

However, Plaintiffs are unable to demonstrate that Congress has "unequivocally waived" the Nation's Sovereign Immunity. Instead they point to a case about the *criminal prosecution of a tribal member* accused of killing eagles for noncommercial purposes in violation of several federal statutes, including the ESA. *Unites States v. Dion*, 476 U.S. 734, (1986). In *Dion*, the court found a waiver had occurred because the subject at issue was expressly addressed within the statutory framework at issue in that case and which gave the court a basis for concluding that Congress' action "reflected an unmistakable and explicit legislative policy". *Id.* at 745. Plaintiffs did not point to any evidence, nor could they, of congressional legislative history in an ESA citizens action. *Dion* did not address any question of sovereign immunity but instead turned on the question of whether a claimed treaty right had been affected by The Bald Eagle Protection Act or the Endangered Species Act.

**II.   Plaintiffs Fail To Establish That Congress Unequivocally Waived The Nations' Sovereign Immunity.**

As discussed above, there is no reliable evidence which supports Congressional abrogation in ESA citizen suits. Therefore, because the Nations possess sovereign immunity, which extends to its Tribal Official acting within the scope of their official duties, and no tribal waiver has

3

occurred, as acknowledge by Plaintiffs, and there is no reliable evidence of Congressional abrogation, accordingly this action must be dismissed. Under Rule 19(a)[2], when a necessary party is immune from suit "there is very little room for balancing other factors set out in Rule 19(b)." *Enter. Mgmt. Consultants, Inc. v. United States*, 883 F. 2d 890, 894 (10th Cir. 1989) (internal quotations omitted).

Plaintiffs argue that if the Nation is dismissed the remaining Defendants will sufficiently protect their interest and granting the relief requested by Plaintiffs will not interfere with implementation of the Settlement Agreement. This is patently false. As an initial matter, it is absurd to argue that the same parties to the Settlement Agreement, which arose out of a litigated dispute, will now adequately represent each other's interests. The Nation has every right to protect its interest in the Settlement Agreement, its interest in this litigation and as sovereign Nations. Simply, the Nations will be prejudiced if the case moves forward without them for the reasons below.

If the relief the Plaintiffs seek is granted it will prevent the parties to Settlement Agreement from meeting the timelines and benchmarks required for its implementation. [Doc. 36] at 18. The result of a failure to meet these benchmarks will "trigger a process by which the Settlement Parties'' agreement including the protections they successfully negotiated for the Kiamichi Basin, may unravel and all previously adverse interest may be returned to litigation. [Doc.36] at 18, *See* § 13 (providing for expiration date if any condition precedent fails)." Accordingly, both the Nations and the remaining Defendants interest would be prejudiced by the likelihood of future litigation and this factor alone weighs strongly in favor of dismissal. *Davis ex rel. Davis v. United*

---

[2] The analysis for prejudicial inquiry under Rule 19(a)(2)(ii) and (b) is the same because the inquiry is "into whether continuing the action without a person will, as a practical matter, impair that person's ability to protect his interest.

4

*States,* 343 F.3d 1282, 1293 (10th Cir. 2003) (quoting *Paterson*, 390 U.S. at 111, ("public stake in settling disputes by wholes, whenever possible.")).

Plaintiffs are incorrect to claim that *Sac and Fox Nation of Missouri v. Norton* applies "directly" to this case. 240 F.3d 1250 (10th Cir. 2001), *cert den.* 534 U.S. 1078 (2002). In *Sac and Fox*, the Department of the Interior ("DOI") was fulfilling a trust duty, on behalf of the tribe, when it issued an opinion that the Secretary of the Interior ("Secretary") was "mandated' to acquire tracts of land on behalf of the tribe and that the tribe could conduct gaming on the land it designated as a "reservation". *Id*. at 1256. The court concluded that the DOI could sufficiently represent the tribe. This is profoundly different from this case in which the Department of the Interior, the State of Oklahoma, Oklahoma City, Oklahoma Water Resource Board and the Water Utilities Trust are parties to a Settlement Agreement which was negotiated and includes concessions and obligations on all parties.

A recent decision from the Ninth circuit provides a useful template for applying Fed. R. Civ. P. 19 and 12(b)(7) to cases where an Indian tribe's sovereign immunity precludes its joinder of a party to a lawsuit alleging violations of the Endangered Species Act, as well as the National Environmental Policy Act. *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*, No. 17-17320, 2019 WL 3404210 (9th Cir. July 29, 2019)

An environmental group, Dine Citizens Against Ruining Our Environment ("CARE"), along with various national conservation organizations, filed a lawsuit in the U.S. District Court for Arizona against various officials and bureaus in the United States Department of the Interior. The lawsuit challenged a variety of agency actions reauthorizing coal mining activities on Navajo Nation trust lands.

The Navajo Transitional Energy Company ("NTEC"), a wholly owned corporation of the Navajo Nation, which is also the owner of the mine, intervened in the action for the limited purpose of moving to dismiss under Rules 19 and 12(b)(7). NTEC asserted that tribal sovereign immunity prevented it from being joined and because it was unwilling to join the litigation; therefore, the lawsuit could not proceed.

The 9th Circuit held that NTEC has a "legally protected interest in the subject matter of this suit that would be impaired in its absence." *Id* at 5. And further reasoned that if the plaintiffs challenge was successful and the actions taken by the agencies were vacated, NTEC's exiting interest in leases, easements and surface mining permits would be impeded. *Id.* at *7 The result of which would be that the mine could not operate, and the Navajo Nation would lose significant revenue. *Id*.

The appellate court affirmed the district court's holding that because NTEC had a legally protected interest and confirmed its conclusion that remaining defendants could not sufficiently represent NTEC. The appellate court affirmed that:

> [T[he Federal Defendants could not adequately represent NTEC's interest in the litigation, because although the agencies had an interested in defending their analysis and decisions, NTEC's interest in the outcome of this far exceed those of the agencies… although NTEC's interest were *currently* aligned with those of Federal Defendants, there could be a later divergence of interest during the course of the litigation…NTEC could not be joined due to the Navajo Nation's sovereign immunity, and that litigation could not, in equity and good conscience, continue in NTEC's absence.

*Id*. at *4 (internal quotations omitted).

Furthermore, although plaintiffs urged that a "public rights" exception should apply so that the litigation could proceed without NTEC the appellate court declined to apply the exception. The appellate court noted that "[t]he public rights exception may apply in a case that could "adversely

6

affect the absent parties' interests," but "litigation must not 'destroy' the legal entitlements of the absent parties; for the exception to apply. *Id* at 11(emphasis added) (quoting *Conner v. Burford*, 848 F.2d 1441, 1459 (9th Cir. 1988).

As noted above, CARE provides a template for evaluating the relevant issues raised by the Nations' immunity that must be addressed to apply Federal Rules of Civil Procedure 19 and 12(b)(7) to the instant matter.

Much like the CARE litigation, here the Plaintiffs are a conservation group alleging through its lawsuit that the Government failed to comply with environmental laws. Like the NTEC, the Nations are a required party that can't be joined because of sovereign immunity as previously addressed. Because joinder of the Nations is unavailable, they seek dismissal of this action.

The CARE court rejected each of these arguments and the same result should obtain here.

Plaintiffs opinion that the hard-fought terms of the Settlement Agreement and Act that concern Sardis Lake levels, the Sardis repayment terms, and Kiamichi instream flow/bypass terms can be derided as "only one aspect of the *otherwise* "broad sweep" of the Settlement Agreement" (italics supplied") is as audacious as it is wrong. In fact, it would be difficult for Plaintiffs to find a provision was more controversial or involving more divergent and distinct interests between and among the settlement parties, particularly with respect the interests of the Nations and the United States.³ The Settlement Agreement includes numerous negotiated provisions which demonstrate

---

³ KRLA appears to be suggesting that for each additional area covered by a settlement agreement there is, a corresponding reduction in the importance of any and all other settlement terms. Nations included a several page summary of the Settlement Agreement in order to highlight the <u>importance</u> of each item to the Nations, not to highlight the number of items. The summary refers to the Sardis Lake/Kiamichi River terms, as follows:

7

the Nations protected interest. The negotiations led to provisions in the Settlement Agreement regarding storage, waivers as to claims, payment forgiveness are all examples of where an adverse ruling, without representation of the Nations, would result in unequal obligations. [Doc. 36] at 18. Ironically, the (public) exhibits accompanying Plaintiffs Response to the Nations Motion to dismiss provide a record demonstrating the significance of various terms in the settlement agreement.

### III. Plaintiffs Do Not Dispute That Amendment Of The Complaint Would Be Futile.

The Nations' argued that amendment of Plaintiffs' Complaint would be futile. However, Plaintiffs did not request leave from the Court to amend if the Motion to Dismiss is granted. Therefore, the Complaint should be dismissed with prejudice. *Grossman v. Novell, Inc*. 120 F.3d 1112, 1126 (10th Cir. 1997).

Likewise, the Nations assert a "legally protected interest" in the Settlement Agreement. The Nations have an interest in the level and flows included in the Settlement Agreement which the Plaintiffs are seeking a review process which will impair. The structure of the Settlement Agreement is not only evidence of the Nations legally protected interest but also demonstrates why not other party to the action can adequate protect the Nations' interest.

### CONCLUSION

---

The settlement Agreement "establish[es] detailed provisions for the maintenance and protection of Sardis Lake surface water levels and Kiamichi Basin bypass flows at the City's proposed point of diversion, see §§ 6.1.5 and 6.1.6 (requiring any permit include bypass flow requirement of 50 cubic feet per second at point of diversion) and §§ 6.1.8 and 6.5.3 (requiring any permit include lake release restrictions for purposes of preventing lake surface elevation from dropping below prescribed levels), both of which were based on consensus technical evaluations of ecological, recreation, fish, and wildlife needs using best available science and information.

[Doc. 36] at 17.

For the foregoing reasons, and the reasons included in the Nations' Motion to Dismiss [Doc. 36], the Nations request that the Court grant the motion to dismiss.

Respectfully submitted this 23rd day of August 2019.

Respectfully submitted,

s/ Michael Burrage
Michael Burrage, OBA No. 1350
Patricia Sawyer, OBA No. 30712
**WHITTEN BURRAGE**
512 N. Broadway, Suite 300
Oklahoma City, OK 73102
Telephone:   (405) 516-7800
Facsimile:   (405) 516-7859
mburrage@whittenburragelaw.com
psawyer@whittenburragelaw.com

***Attorneys for Defendants Bill Anoatubby, in his official capacity as Governor of the Chickasaw Nation and Gary Batton, in his official capacity as Chief of the Choctaw Nation of Oklahoma***

## CERTIFICATE OF SERVICE

  I hereby certify that on August 23, 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the ECF registrants:

            */s/ Michael Burrage*
            Michael Burrage