# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. THE KIAMICHI RIVER LEGACY ALLIANCE, INC., <br> 2-9. KENNETH ROBERTS, DANIEL ROBERTS, DALE JACKSON, JUSTIN JACKSON, KREY LONG, JOHNNY ROBBINS, WELDON ROBBINS, and WILLIAM REDMAN, individuals, and <br> 10. MYRL REDMAN, an individual and as Trustee of THE LOUISE A. REDMAN REVOCABLE TRUST, <br>          Plaintiffs, <br><br> v. <br><br> 1. DAVID BERNHARDT, in his official capacity as Secretary of the United States Department of the Interior, <br> 2. KEVIN STITT, in his official capacity as Governor of the State of Oklahoma, <br> 3. BILL ANOATUBBY, in his official capacity as Governor of the Chickasaw Nation, <br> 4. GARY BATTON, in his official capacity as Chief of the Choctaw Nation of Oklahoma, <br> 5. DAVID HOLD, in his official capacity as the Mayor of the City of Oklahoma City, <br> 6. JULIE CUNNINGHAM, in her official capacity as Executive Director of the Oklahoma Water Resources Board, and <br> 7, CARL EDWARDS, in his official capacity as Chairman of the Board of Trustees of the Oklahoma City Water Utilities Trust, <br>          Defendants, | Case No. CIV-19-108-RAW |

## ORDER

Plaintiffs bring this action pursuant to Endangered Species Act ("ESA"), 16 U.S.C. § 1531, *et seq.*[1] The Kiamichi River Legacy Alliance ("KRLA") is an Oklahoma non-profit

---

[1] Plaintiffs state that this court has jurisdiction pursuant to the citizen suit provision of the ESA, 16 U.S.C. § 1540(g)(1), which provides that the "district courts shall have jurisdiction . . . to enforce any such provision or regulation" of the ESA. Plaintiffs state that the court also has

organization that, *inter alia*, supports endangered freshwater species in order to preserve the natural ecology of the Kiamichi River. The individual Plaintiffs are members of the KRLA, own property on the Kiamichi River, and use it for recreational, educational, cultural, and aesthetic purposes.

Plaintiffs' claims concern a Tribal water rights Settlement Agreement entered in August of 2016 between: the Department of the Interior ("DOI"); the State of Oklahoma and the Oklahoma Water Resources Board (collectively, "the State"); the City of Oklahoma City and the Oklahoma City Water Utilities Trust (collectively, "the City"); and the Chickasaw Nation and the Choctaw Nation of Oklahoma (collectively, "the Tribes"). *See Docket No. 2-1 at 3*.

Plaintiffs allege that the Settlement Agreement may affect three species of endangered mussels ("the Endangered Mussels") in the Kiamichi River and that Defendants did not consult with the United States Fish and Wildlife Service ("FWS") prior to entering that Agreement as required by Section 7 of the ESA. Plaintiffs also request relief under Section 9, alleging that the plan to be implemented under the Settlement Agreement will significantly impact the Endangered Mussels' habitat, which will kill, harm, and harass the Endangered Mussels as defined by the ESA and its regulations. Plaintiffs request that the court declare that Defendants violated Sections 7 and 9 of the ESA and enjoin them from continuing to do so.

Now before the court is the motion to dismiss by Bill Anoatubby, in his official capacity as Governor of the Chickasaw Nation, and Gary Batton, in his official capacity as Chief of the Choctaw Nation of Oklahoma (collectively "Tribal Defendants") [Docket No. 36]. The Tribal Defendants request dismissal for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P.

---

jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 2201 (declaratory judgment), and 28 U.S.C. § 2202 (injunctive relief).

2

12(b)(1), for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), and for failure to join a party under Rule 19 pursuant to Fed. R. Civ. P. 12(b)(7).

### *Standard of Review*

For purposes of the motion to dismiss, the court accepts as true all of the factual allegations in the Complaint and construes those facts in the light most favorable to Plaintiffs. *See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1284 (10th Cir. 2008). Of course, the court does not accept as true conclusory statements or legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)( "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")).

A motion pursuant to Rule 12(b)(1) takes one of two forms – a facial attack or a factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). A facial attack questions the sufficiency of the complaint, and in reviewing it, the court accepts the allegations in the complaint as true. *Id*. A factual attack goes beyond the allegations in the complaint and challenges the facts upon which subject matter jurisdiction depends. *Id*. at 1003. In reviewing a factual attack, the court does not accept the allegations in the complaint as true and has wide discretion to consider evidence to resolve the disputed jurisdictional facts. *Id*. The Tribal Defendants allude to a factual attack, but do not include any evidence with their motion or reply. In any event, the court need only consider the allegations in the Complaint in deciding the instant motion.

To survive the Rule 12(b)(6) motion to dismiss, the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plaintiffs must nudge their "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted). In other words, the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.

> [T]he *Twombly / Iqbal* standard is a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do. In other words, Rule 8(a)(2) still lives. Under Rule 8, specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests.

*Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235-36 (10th Cir. 2013) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)).

### *Tribal Immunity*

The Tribal Defendants argue they are entitled to sovereign immunity. In their motion, the Tribal Defendants speculate that Plaintiffs possibly attempted to bypass tribal sovereign immunity by naming Governor Bill Anoatubby and Chief Gary Batton in their official capacities rather than naming the Tribes. In their response, however, citing *Lewis v. Clarke*, 137 S.Ct. 1285, 1290-91 (2017), Plaintiffs state that this "action is brought against [these] Defendants in their official capacities, which means that the action is considered to be against the tribes themselves, and that the tribes are the real parties in interest." *Docket No. 51 at 1, n. 1*.

Plaintiffs further acknowledge that the Choctaw Nation of Oklahoma and the Chickasaw Nation are federally recognized tribes. *Docket No. 51 at 9.*

Instead, citing 16 U.S.C. §§ 1540(g)(1)(A) and 1532, Plaintiffs argue that Congress unequivocally waived tribal sovereign immunity. Section 1540(g)(1)(A) provides:

> (1) Except as provided in paragraph (2) of this subsection any person may commence a civil suit on his own behalf—
> (A) to enjoin any person, including the United States and any other governmental instrumentality or agency (to the extent permitted by the eleventh amendment to the Constitution), who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof . . .

Section 1532 provides in pertinent part:

> (13) The term "person" means an individual, corporation, partnership, trust, association, or any other private entity; or any officer, employee, agent, department, or instrumentality of the Federal Government, of any State, municipality, or political subdivision of a State, or of any foreign government; any State, municipality, or political subdivision of a State; or any other entity subject to the jurisdiction of the United States.

Plaintiffs argue that the Tribal Defendants are included as "any other entity subject to the jurisdiction of the United States." As the Tribal Defendants argue, however, Plaintiffs fail to cite a case, and concede that there is not one, in which a federal court has ruled that Congress waived tribal sovereign immunity for purposes of an ESA citizen suit.

"Indian tribes are neither states, nor part of the federal government, nor subdivisions of either. Rather, they are sovereign political entities possessed of sovereign authority not derived from the United States, which they predate." *Nanomantube v. Kickapoo Tribe in Kansas*, 631 F.3d 1150, 1151-52 (10th Cir. 2011) (citation omitted). Tribes are not subject to suit "unless the tribe's sovereign immunity has been either abrogated by Congress or waived by the tribe." *Id.* (citation omitted). In either case, "[a] waiver of tribal sovereign immunity 'cannot be implied but must be *unequivocally expressed*.'" *Alabama-Quassarte Tribal Town v. United States*, 899

F.3d 1121, 1124 (10th Cir. 2018) (citing *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) (emphasis added)).

Plaintiffs argue that Congressional intent to abrogate tribal sovereign immunity is clear because of the repeated use of the all-inclusive adjective "any" in conjunction with "person" or entity." The court does not agree. Congress specifically named the Federal Government, States, municipalities, political subdivisions of States, foreign governments, but did not include Indian Tribes. The court is not persuaded that Congress intended to include Indian Tribes as "any other entity subject to the jurisdiction of the United States," nor is it persuaded that the term "any person" includes Tribes. "A waiver of tribal sovereign immunity 'cannot be implied but must be *unequivocally expressed.*'" *Id.* Congress did not unequivocally express a waiver of tribal sovereign immunity here. The Tribal Defendants are immune from this suit and must be dismissed for lack of jurisdiction.

### *Indispensable Parties*

The Tribal Defendants also argue that because Plaintiffs may not join the Tribal Defendants, the action must be dismissed for failure to join required and indispensable parties. A party is required if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or
(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
  (i)   as a practical matter impair or impede the person's ability to protect the interest; or
  (ii)  leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). By Plaintiffs' own account, their Complaint is narrowly focused. *Docket No. 51 at 1.* "The Settlement Agreement provisions that are pertinent to this case . . . are *only those surrounding the Tribes' withdrawal of their objection* to Oklahoma City's permit

6

application to divert water from the Kiamichi River Basin, and to the grant of such a permit by the [Oklahoma Water Resources Board]." *Docket No. 51 at 7 (emphasis added).* Clearly, in the Tribal Defendants' absence then, the court cannot accord complete relief among the existing parties. The Tribal Defendants are required parties.

Under Rule 19, a court must dismiss an action if: (1) an absent party is required, (2) it is not feasible to join the absent party, and (3) it is determined "in equity and good conscience" that the action should not proceed among the existing parties. *Philippines v. Pimentel*, 553 U.S. 851, 856 (2008); *Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 997 (10th Cir. 2001). As the Tribal Defendants are entitled to sovereign immunity, it is not feasible to join them. The court then "must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed" under Rule 19.

The factors to be considered include:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
(2) the extent to which any prejudice could be lessened or avoided by:
    (A) protective provisions in the judgment;
    (B) shaping the relief; or
    (C) other measures;
(3) whether a judgment rendered in the person's absence would be adequate; and
(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). The Tribal Defendants are parties to the Settlement Agreement at the center of Plaintiffs' action. As the Tribal Defendants argue, a party to a contract is the quintessential "indispensable party," and "no procedural principle is more deeply imbedded in common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable." *Jicarilla Apache Tribe v. Hodel*, 821 F.2d 537 (10th Cir. 1987) (citation and internal brackets omitted).

7

Furthermore, Plaintiffs challenge the settlement of the Tribes' water rights and sovereign rights relating to water resources within their territory.  The Tribal Defendants' interests are not aligned with any other Defendant.  Any judgment as to these issues would surely prejudice the Tribal Defendants, no measures would lessen or avoid such prejudice, and no judgment rendered in the Tribal Defendants' absence would be adequate.  Plaintiffs have no interest in the Tribal Defendants' water rights.  Plaintiffs also have an adequate remedy if this action is dismissed for nonjoinder – a lawsuit against the City and/or the State and/or any other acting entity if they do not comply with the ESA before diverting any water from the Kiamichi River.  The Tribal Defendants are indispensable parties.  Accordingly, this action is hereby dismissed.  Amendment of Plaintiffs' Complaint would be futile.

### *Other Motions*

Also before the court are the motions to dismiss filed by David Bernhardt [Docket No. 33], by Julie Cunningham and Kevin Stitt [Docket No. 34], and by Carl Edwards and David Holt [Docket No. 35].  As the court has granted the Tribal Defendants' motion to dismiss, it finds these motions moot.  The court notes, however, that it agrees with these Defendants that this action is not ripe.  By Plaintiffs' own account as discussed above, this action concerns only the Tribal Defendants' withdrawal of their objection to the permit application to divert water from the Kiamichi River Basin and the granting of the permit that would follow.  The Settlement Agreement is not the permit, nor is it even complete.  Even if the Tribal Defendants were to agree to more than what the ESA allows, the Settlement Agreement would not supersede the ESA.  It does not follow that the Tribal Defendants' withdrawal of their objection would result in the remaining Defendants moving forward without complying with the ESA.  Pursuant to the ESA, before any water may be diverted from the Kiamichi River, the acting entity(ies) must

consult with the FWS.  If the remaining Defendants (and any other entities involved) comply with the ESA moving forward as required, no lawsuit would be necessary.

*Conclusion*

For the reasons set forth herein, the motion to dismiss by the Tribal Defendants [Docket No. 36] is hereby GRANTED.  The other motions to dismiss [Docket Nos. 33, 34, and 35] are MOOT.

**IT IS SO ORDERED** this 11th day of February, 2020.

_____
**THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA**